## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

John W. Oxendine,

                    Plaintiff,        Case No. 1:17-cv-04658

v.                                Michael L. Brown
                                United States District Judge

Georgia Government
Transparency and Campaign
Finance Commission, et al.,

                    Defendants.

_____/

## OPINION AND ORDER

Before the Court is Plaintiff's Renewed Motion for a Temporary Restraining Order ("TRO") (Dkt. 27) and Defendants' Motion to Dismiss the Amended Complaint (Dkt. 24). For the reasons set forth below, the Court abstains from deciding the constitutional claims in this case.

## I.     BACKGROUND

The Georgia Government Transparency and Campaign Finance Commission (the "Commission") is an agency created under state law and charged with enforcing Georgia's Ethics in Government Act, which governs, among other things, how candidates may use campaign

contributions and the disclosures they must make when accepting them. *See* O.C.G.A. §§ 21-5-1 *et seq.* As part of its duties, the Commission investigates candidates for public office alleged to have violated the Ethics in Government Act. The Commission can initiate an investigation upon the receipt of a written complaint from a member of the public. O.C.G.A. § 21-5-7. Alternatively, the Commission can initiate an investigation if it finds probable cause to believe a candidate violated Georgia law. *Id.* To aide its investigation, the Commission may issue subpoenas to compel witnesses to provide sworn testimony and produce relevant documents. *See* O.C.G.A. § 21-5-6(a)(5).

If the Commission finds reasonable grounds to believe a candidate violated Georgia ethics law, the Commission may schedule a due process hearing before an administrative law judge with the Office of State Administrative Hearings. *See* O.C.G.A. § 21-5-6(b)(10)(A). Once the administrative law judge issues an opinion, the Commission can then adopt, modify, or reject that opinion before making its own final decision. *See* O.C.G.A. § 50-13-41(d)(1)(3). If the Commission concludes that a candidate violated Georgia ethics laws, it can order the individual to cease and desist from committing further violations, impose monetary

penalties, or refer the matter to the Attorney General for additional civil action. The Commission may also refer alleged criminal violations to law enforcement authorities. *See* O.C.G.A. §§ 21-5-6(b)(11), (14). But the process must comply with the Georgia Administrative Procedures Act, meaning that an aggrieved party may seek judicial review of the Commission's final decision in a state superior court and seek additional appellate review in the Georgia Court of Appeals and Georgia Supreme Court. *See* O.C.G.A. §§ 50-13-19; 15-13-20.

John W. Oxendine was a candidate in the 2010 Georgia gubernatorial race. Dkt. 12 at ¶ 13. After his defeat, Oxendine transferred $237,000 of the campaign's funds into one or more bank accounts controlled by his law firm. Dkt. 24-2 at ¶ 18. On June 20, 2017, the Commission filed a complaint against Oxendine alleging that the transfers were in violation of multiple campaign ethics provisions, including O.C.G.A. § 21-5-33(c), which states that "[campaign c]ontributions and any interest thereon, if any, shall not constitute personal assets of such candidate or of such public officer." *See generally* Dkt. 24-2. For his part, Oxendine contends that the transfers from the campaign to the law firm account(s) were "investments" that he made so

the campaign funds could earn more interest than they otherwise would have earned sitting in the campaign account. *See* Dkt. 12 at ¶ 22. Oxendine also contends that he repaid the campaign in full plus nearly $9,000 in interest. *Id.*

The Commission's investigation is ongoing. It served subpoenas on banks at which Oxendine's law firm had accounts. *Id.* at ¶ 24. In December 2017, Oxendine filed a motion to quash the subpoenas in Fulton County Superior Court. Dkt. 26 at 7. He argued, among other things, that O.C.G.A. § 21-5-33(c) is unconstitutionally vague. *See id.* The superior court denied the motion, and Oxendine appealed that decision to the Georgia Supreme Court. *Id.* His appeal is pending.

On November 20, 2017, Oxendine filed this lawsuit alleging — as he has done in the Fulton County Superior Court and the Georgia Supreme Court — that O.C.G.A. § 21-5-33(c) is unconstitutionally vague. (Dkt. 1). Oxendine also filed a motion for a temporary restraining order ("TRO") seeking to enjoin the Commission from enforcing the statute, effectively shutting down the Commission's investigation and enforcement action against him. (Dkt. 7). After Oxendine filed an amended complaint, the Court denied as moot the pending motion for a

TRO. (Dkt. 25). Now, Oxendine has renewed his motion for a TRO and has requested again that the Court enjoin the Commission from enforcing O.C.G.A. § 21-5-33(c) as to him and as to all other persons. (Dkt. 27). Defendants have opposed the TRO and have moved to dismiss the amended complaint. (Dkt. 24).

## II.  DISCUSSION

Generally, a federal court has an obligation to hear and decide cases within its jurisdiction. Many years ago, the Supreme Court explained that a federal district court has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia,* 6 Wheat. 264, 404 (1821). There is an exception, however. In *Younger v. Harris*, 401 U.S. 37 (1971), a defendant in a state criminal prosecution filed suit in federal court asking the federal court to enjoin the state prosecution and declare the state criminal statute unconstitutional. The trial court (a three-judge panel) found the state statute unconstitutional and restrained the district attorney from prosecuting the plaintiff. The Supreme Court reversed. In doing so, it held that, absent evidence of bad faith or harassment by the state prosecutor, the federal court should abstain from exercising jurisdiction

5

"to restrain a criminal prosecution when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.* at 43-44.   The Supreme Court explained that abstention by the federal court follows from "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.*  These principles remain as important today as they were nearly fifty years ago.

Younger abstention initially applied only to state *criminal* proceedings.   The Supreme Court, however, later held that *Younger* abstention is "fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).   With some clarification and correction over the years, the Supreme Court has explained that only three "exceptional circumstances" justify a federal court's refusal to decide a case in deference to a state proceeding: (1) an ongoing state criminal prosecution, (2) a pending state civil proceeding

akin to a criminal prosecution, and (3) a pending state civil proceeding that implicates a state's interest in enforcing the orders and judgments of its courts. *See Sprint Comm'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (citing *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 368 (1989)). If one of these circumstances is present, a court should then confirm that abstention is favored by considering the three factors that the Supreme Court announced in *Middlesex,* specifically: (1) whether there is an ongoing state judicial proceeding (2) that implicates important state interests and (3) provides an adequate opportunity to raise federal challenges. *Middlesex*, 457 U.S. at 432; *Sprint*, 571 U.S. at 81 (holding *Middlesex* factors do not provide fourth grounds for abstention but rather are "factors appropriately considered by the federal court before invoking *Younger* when other grounds exist).

## A.   Oxendine faces a state civil proceeding akin to a criminal prosecution.

The Commission's proceeding against Oxendine does not fall within the first or third categories enunciated by the Supreme Court in *Sprint*. The proceeding is civil in nature, not criminal, and does not touch on Georgia's ability to enforce the orders and judgments of its courts. The question, therefore, is whether the action against Oxendine is "akin to a

criminal proceeding in important respects." *Sprint*, 571 U.S. at 80.   The Supreme Court has identified the characteristics of such a proceeding. First, "enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.,* the party challenging the state action, for some wrongful act." *Sprint*, 571 U.S. at 79-80.   Second, "a state actor is routinely a party to the state proceeding and often initiates the action." *Id.*   Finally, the state actor often conducts an investigation, which culminates in the filing of a formal complaint or charges against the federal plaintiff. *Id.*

The Commission's proceeding against Oxendine falls squarely within the Supreme Court's description of a civil proceeding akin to a criminal proceeding and warrants abstention.  The Commission — a state actor created by the state and charged with enforcing its campaign ethics laws — is a party to the state proceeding.  It initiated the proceeding against Oxendine after investigating him for the potential misuse of campaign finds.  The investigation culminated in a formal complaint against Oxendine, the federal plaintiff.  The Commission then filed the complaint to sanction Oxendine for a wrongful act, that is, the transfer of campaign contributions to his law firm account in violation of Georgia

campaign ethics laws.  If the Commission's allegations are substantiated, the Commission may impose sanctions on Oxendine.  *See* O.C.G.A. § 21-5-6(b)(14)(C)(i) (authorizing civil penalties for violations).  This proceeding qualifies as a state civil proceeding akin to a criminal prosecution under *Sprint's* second category and falls within *Younger's* scope.  *See Sprint*, 571 U.S. at 73.

The Court's conclusion is supported by numerous other instances in which courts have abstained from hearing federal challenges brought by plaintiffs — like Oxendine — seeking to stop or control the outcome of ongoing state civil enforcement actions.  *See, e.g.*, *Thompson v. Fla. Bar*, 526 F. Supp. 2d 1264 (S.D. Fla. 2007) (*Younger* abstention warranted when attorney facing state bar disciplinary proceeding filed federal claim seeking to enjoin state proceeding on grounds that underlying bar rule was unconstitutional); *Cohran v. State Bar of Georgia*, 790 F. Supp. 1568, 1570–71 (N.D. Ga. 1992) (same); *Kotz v. Fla.*, 33 F. Supp. 2d 1019 (M.D. Fla. 1998) (*Younger* abstention warranted when physician facing state medical licensing board disciplinary proceeding brought federal claim seeking to compel state to provide license on grounds that state proceeding violated Americans With Disabilities Act); *Huffman v.*

*Pursue, Ltd.*, 420 U.S. 592 (1975) (*Younger* abstention warranted when theater owner facing obscenity claim by state officials filed federal claims seeking to enjoin state action on grounds that underlying state statute was unconstitutional).  In each of these cases, the courts held that the federal court should abstain from enjoining or otherwise controlling the outcome of the state enforcement proceeding.  The same applies in this case.

It is also worth noting that, should the Commission conclude that Oxendine "knowingly" failed to comply with the statute at issue, it could refer the matter for criminal prosecution.  *See* O.C.G.A. § 21-5-9 ("Except as otherwise provided in this chapter, any person who knowingly fails to comply with or who knowingly violates this chapter shall be guilty of a misdemeanor.").  That the conduct at issue may also constitute a criminal violation further supports this Court's conclusion that the proceeding at issue is a civil proceeding akin to a criminal prosecution.

**B.    The *Middlesex* factors support abstention**

The *Middlesex* factors also favor abstention.   The state action against Oxendine is pursuant to the Georgia Administrative Procedures Act and involves a proceeding before an administrative law judge.  Any

final decision is also subject to judicial review by a Georgia superior court, the Georgia Court of Appeals, and the Georgia Supreme Court. *See* O.C.G.A. § 50-13-19(a); *see also* Dkt. 24-1 at 10. The action against Oxendine, therefore, constitutes an ongoing judicial proceeding for purposes of the *Middlesex* factors. *See San Jose Silicon Valley Chamber of Commerce*, 546 F.3d 1087, 1094 (9th Cir. 2008) (election commission proceeding "involved the investigation of facts of Plaintiff's … campaign and the application of the law to those facts—a proceeding plainly 'judicial in nature'"); *see also Watson v. Fla. Judicial Qualifications Comm'n*, 618 F. App'x 487, 490–91 (11th Cir. 2015) (civil proceeding qualified for *Younger* abstention because it "sought to punish [plaintiff] for alleged unethical actions, and it was initiated and prosecuted by a state actor").

The proceeding plainly implicates an important state interest. In passing Georgia's Ethics in Government Act, Georgia's State Legislature declared that it is "the policy of th[e] state, in furtherance of its responsibility to protect the integrity of the democratic process and to ensure fair elections for constitutional offices . . . to institute and establish a requirement of public disclosure of campaign contributions

and expenditures relative to the seeking of such offices." O.C.G.A. § 21-5-2 (Policy and Intent Declared). Georgia's elected officials clearly believe that the campaign ethics laws are important to protect the integrity of Georgia's electoral process. The state's ability to enforce its ethics laws, therefore, must also be an important state interest. *Gwinn v. State Ethics Comm'n*, 262 Ga. 855, 857, 426 S.E.2d 890, 892 (1993) (noting that Ethics in Government Act supports State of Georgia's "legitimate interest in preserving integrity of democratic process"); *Brown v. Hartlage*, 456 U.S. 45, 52 (1982) ("the States have a legitimate interest in preserving the integrity of their electoral processes").

Finally, Oxendine will have an opportunity to raise his federal challenge in the state proceeding. "Minimal respect for the state process, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." *Middlesex*, 457 U.S. at 431. As a result, a "federal court 'should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" *31 Foster Children v. Bush*, 329 F.3d 1255, 1279 (11th Cir. 2003) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987)).

Oxendine cannot show that the state proceeding will deny him the opportunity to raise his constitutional challenge. The Georgia courts are perfectly capable of deciding the constitutionality of the statute at issue. Oxendine, in fact, admits in his response to the motion to dismiss that he has already raised his constitutional challenge at the state court level. Dkt. 26 at 17. He argues that the Georgia courts "are unlikely to rule on the constitutional challenge" under the principle of constitutional avoidance. *Id.* But this is just his opinion. He cites no authority to suggest that he is procedurally prevented from raising the constitutional claim or that the Georgia courts will not give it due consideration. As a result, the state proceeding satisfies the third *Middlesex* factor. *See Dandar v. Church of Scientology Flag Serv. Org., Inc.*, 619 F. App'x 945, 948 (11th Cir. 2015) ("As long as the litigant is not procedurally prevented from raising the constitutional claims in state court and thereafter petitioning for a writ of *certiorari* in the United States Supreme Court, this exception to abstention is not triggered."); *see also Watson*, 618 F. App'x at 490–91 (abstention appropriate when plaintiff failed to show she could not raise constitutional claims in state proceeding). Likewise, his claim that the Commission lacks the authority

13

to declare the statute at issue unconstitutional is irrelevant.  The factor turns on whether there is judicial review.  *See Middlesex,* 547 U.S. at 432 ("[wh]atever doubt, if any, that may have existed about respondent Hinds' ability to have constitutional challenges heard in the bar disciplinary hearings was laid to rest by the subsequent actions of the New Jersey Supreme Court").

That the proceeding against Oxendine is still in the administrative process and not yet pending in state court does not change the analysis. In *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619 (1986), the Ohio Civil Rights Commission (a state agency) initiated an investigation against a private school for alleged sexual discrimination and retaliation, leading to an administrative proceeding against the school.  The school responded by filing a federal complaint seeking to enjoin the administrative proceeding on constitutional grounds.  The Supreme Court held that both the district court and the court of appeals erred in failing to apply *Younger* abstention.  The Supreme Court recognized that its prior decisions had extended *Younger* beyond criminal cases into "civil proceedings in which important state interests are involved."  *Id.* at 626 (citing *Huffman v. Pursue, Ltd.,* 420

U.S. 592 (1975)).  The Court explained that abstention is appropriate in "state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim."  *Id.*  The *Dayton* opinion then recognized that "the elimination of prohibited sexual discrimination is a sufficiently important state interest" to warrant abstention.  *Id.* at 628.  Finally, the Supreme Court explained that it is sufficient if the "constitutional claims may be raised in state-court judicial review of the administrative proceeding."  *Id.*

This case is procedurally identical to *Dayton*.  The Commission in this case — like the Civil Rights Commission in *Dayton* — filed a complaint and began administrative proceedings to enforce state law.  Oxendine — like the defendant in *Dayton* — filed a complaint in federal court arguing that the state proceeding violated his constitutional rights and must be enjoined.  A state has no less of a compelling interest in protecting the integrity of its elections than it does in eliminating sexual discrimination.  And Oxendine will have a fair opportunity to raise his constitutional challenge in the Georgia trial and appellate courts

15

following any adverse administrative finding.   The Supreme Court's decision in *Dayton* fully supports abstention here.[1]

## C.    None of the exceptions to *Younger* abstention applies here.

Notably, even if the *Younger* prerequisites are satisfied, abstention is not appropriate if there is "bad faith, harassment, or a patently invalid state statute."   *Henry v. Harkness*, 701 Fed. Appx. 878, 882 (11th Cir. 2017; *see also Redner v. Citrus County, Florida*, 919 F.2d 646, 649 (11th Cir. 1990).   None of these exceptions applies here.

A plaintiff asserting bad faith or harassing prosecutions as an exception to *Younger* abstention must allege specific facts to support an inference of bad faith or harassment.   *Collins v. Kentucky*, 807 F.3d 95, 97 (7th Cir. 1986) (affirming dismissal of plaintiff's case on *Younger* abstention grounds without evidentiary hearing where plaintiff failed to allege facts supporting inference of bad-faith prosecution). Courts have

---

[1] *Dayton* was decided before the Supreme Court in *Sprint* more clearly enunciated the three categories in which a federal court should abstain from exercising jurisdiction.  But, nothing in *Sprint* suggests that the Supreme Court intended to preclude abstention on matters that otherwise fall within those three categories simply because they are in the administrative process and not yet pending in state court at the time the federal action is filed.

considered three factors in determining whether a prosecution is commenced in bad faith or to harass, specifically: (1) whether the state action was frivolous or undertaken with no reasonably objective hope of success, *see Kugler v. Helfant*, 421 U.S. 117, 126 n.6, (1975) (bad faith "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction"); (2) whether it was brought to retaliate for or deter the exercise of a constitutional right, *see Younger*, 401 U.S. at 48 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 482 (1965)); and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions, *see id*. at 49.

The Commission's action against Oxendine bears none of these characteristics.[2]  Oxendine argues that he has established bad faith because the Commission brought the action against him without a finding of probable cause.  *See* Dkt. 24 at 14.  He does not allege this, however, in his Amended Complaint; rather, he raises this point only in

---

[2] Indeed, Oxendine does not allege that the Commission brought the underlying action against him in retaliation for or to deter him from exercising some constitutional right.

his opposition to the motion to dismiss. *See* Dkt. 26 at 14. And probable cause is not the standard for evaluating whether harassment exists as a basis for federal court intervention. Rather — as stated above — Oxendine must demonstrate that the Commission's prosecution was frivolous or undertaken with no reasonably objective hope of success.

The Supreme Court has stated that federal courts should apply this exception to abstention only in "cases of *proven* harassment or prosecutions undertaken by state officials without hope of obtaining a valid conviction." *Perez v. Ledesma,* 401 U.S. 82, 85 (1971). Even accepted as true, Oxendine's allegations do not establish bad faith so as to warrant intervention. And because Oxendine admits that he transferred the funds from his campaign account to his law firm account, it cannot be said that the Commission brought the claims against him without a reasonable expectation of success. The claims are not frivolous.

Oxendine also claims this Court should sidestep abstention because the Commission "has been harassing [him] for nearly a decade" and is actively "cook[ing] up" claims against him. Dkts. 12 at 4; 26 at 18. He alleges that the Commission has previously filed two other complaints against him concerning his conduct during the 2010 Georgia

gubernatorial campaign. While numbers do not tell the whole story, Oxendine cites no case to suggest that the fact of two other proceedings against him constitutes harassment, and the Court has found no such case. To the contrary, Courts have rejected claims of harassment involving a far greater number of state prosecutions when those prosecutions were supported by the facts. *See e.g., Collins v. County of Kendall, Ill.,* 807 F.2d 95, 99 (7th Cir. 1986) ("Instituting approximately thirty criminal prosecutions [against a bookstore for obscene material] over a two-year period does not constitute bad faith or harassment in and of itself.").

Oxendine's allegations also do not raise any suggestion of harassment. He alleges, for example, that the Commission filed the first complaint against him in 2009, claiming he had received contributions from political action committees in excess of the state limits. *See* Dkt. 12, ¶ 13. To impeach that action, he alleges that a Commission staff attorney once stated that his conduct did not violate Georgia law. *Id.* at ¶ 14. Yet, he admits that a second Commission staff attorney reached the opposite conclusion. *Id.* at ¶ 15. His allegations do not suggest that the initial complaint was without factual basis, frivolous, or intended to harass.

19

Oxendine alleges that the Commission filed the second complaint against him in 2015, claiming that he had not refunded money to his donors or otherwise disposed of campaign contributions as required by state law following his loss in the election. *Id.* at ¶ 17. He alleges that the Commission brought that complaint after a newspaper article raised the same allegation. *Id.* at ¶ 13. But Oxendine makes no allegation that the second complaint was baseless. He alleges only that the Commission provided the complaint to the media and failed to provide him statutory notice before subpoenaing bank records. *Id.* at ¶¶ 18, 20-21. Again, his allegations are insufficient to establish harassment by the Commission.

The first and second complaints contain allegations that are distinct from one another and from the complaint at issue in this matter. The mere fact that the Commission filed three separate complaints implicating three different types of alleged conduct over an eight-year period does not suggest harassment. It is also worth noting that Oxendine does not allege that the factual allegations in any of the complaints are false. He merely alleges a difference of opinion with the Commission as to whether his conduct violated Georgia law. Accepted as true, Oxendine's allegations do not establish that either of the two

previous complaints against him (or the complaint underlying this matter) lack a reasonable basis in fact or law. Without such allegations, his mere claim of harassment is insufficient to avoid abstention. *See Weitzel v. Div. of Occupational and Professional Licensing of Dept. of Commerce of State of Utah*, 240 F.3d 871, 877 (10th Cir. 2001) (mere claim of harassment insufficient when factual basis existed for three prior state proceedings).

That these other matters remain pending also does not suggest harassment or improper motive by the Commission. Indeed, it appears the delay in resolving those matters may have resulted from Oxendine's efforts to collaterally attack the proceedings in Georgia superior courts and courts of appeals rather than any delay by the Commission for improper motive. *See* Dkt. 24-1 at 6 n.3. Likewise, the fact that local media has published stories about the second investigation (which Oxendine alleges were prompted by the Commission), does not prove that the Commission has instituted the underlying proceeding (about which he does not claim there have been any leaks) for the purpose of harassing him.

This case also does not involve a patently invalid state statute. The Eleventh Circuit very narrowly construes this exception to *Younger* abstention. The Eleventh Circuit has explained that this exception applies only if a state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Hughes v. Attorney Gen. of Fla.,* 377 F.3d 1258, 1263 (11th Cir. 2004) (citing *Juidice,* 430 U.S. at 338)). This exceedingly high bar is not met here. Oxendine challenges O.C.G.A. § 21-5-33(c) for vagueness, but his arguments do not persuade the Court that the statute is patently invalid as required by this narrow exception. *See id; Butler v. Ala. Inquiry Comm'n,* 245 F.3d 1257, 1265 (11th Cir.2001) ("[W]hile we today make no decision about the constitutionality of Alabama's judicial canons, we doubt that Canon 7(B)(2) patently or fragrantly violates the Constitution 'in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' ").

## III.   CONCLUSION

Because the *Younger* prerequisites are satisfied and no exceptions apply, the Court will abstain from deciding the constitutional claim in this lawsuit, which is the only claim asserted in the complaint. Accordingly, the Defendants' motion to dismiss the amended complaint (Dkt. 24) is **GRANTED** only to the extent that the Court agrees that *Younger* abstention applies and declines to rule on the merits of the case. The case is **DISMISSED.**  *See Cormier v. Green*, 141 Fed. Appx. 808, 816 (11th Cir. 2005) (affirming dismissal of complaint under *Younger*); *Old Republic Union Ins. Co. v. Tillis Trucking Co.,* 124 F.3d 1258, 1264 (11th Cir. 1997) (same). Plaintiff's renewed motion for a TRO (Dkt. 27) is **DENIED** as moot.

   **IT IS SO ORDERED.**

Dated: July 16, 2018
Atlanta, Georgia

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE